US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED
JUN 06 2016
DOUGLAS F. YOUNG, Clerk
By
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

CRISTIANNA MCKINNEY PLAINTIFF

v. CASE NO. 16-6055

MALVERN SCHOOL DISTRICT DEFENDANT

## COMPLAINT

COMES NOW Plaintiff, by and through counsel, Wallace, Martin, Duke & Russell, PLLC, and for Plaintiff's Complaint, Plaintiff states:

## PARTIES AND JURISDICTION

1. Plaintiff Cristianna ("McKinney") is a resident and citizen of Hot Spring County, Arkansas, who worked for Defendant in Hot Spring County, Arkansas. Defendant Malvern School District ("Malvern") is a public entity as defined by the laws of the State of Arkansas.

2. This is an action brought under under the Age Discrimination in Employment Act of 1967 ("ADEA"); under Title VII of the Civil Rights Act of 1964 ("Title VII"); under the Americans with Disabilities Act as Amended ("ADA"); under the Rehabilitation Act of 1973 ("Rehab Act"); under the Teacher Fair Dismissal Act ("TFDA"); for breach of contract; and for promissory estoppel. Since the acts giving rise to this action arose in Hot Spring County, Arkansas venue is proper. This Court has personal and subject matter jurisdiction over the parties.

## GENERAL ALLEGATIONS OF FACT

3. McKinney is a 60-year-old, African-American woman who was employed by Defendant beginning on or about August 2011.

4. At all times relevant, McKinney performed all jobs assigned to McKinney to the satisfaction of Defendant.

5. McKinney suffers from high blood pressure as well as other medical conditions that affect her cardiovascular system.

6. These medical conditions make it difficult for McKinney to sleep, concentrate, think, or stand without proper medication.

7. Malvern knew about McKinney's disabilities.

8. In January 2013, McKinney called Stephen Barber ("Barber"), the principal at the school where McKinney worked, after McKinney was admitted to Hot Springs County Hospital.

9. Barber then contacted Janet Blair ("Blair"), Assistant Superintendent for Academics at Malvern, about McKinney's hospital admission and condition.

10. McKinney was enrolled in an academic training program at Henderson State University ("Henderson") overseen by the Arkansas Department of Education ("the Department").

11. Henderson required that McKinney provide Henderson with information about her medical condition.

12. In addition, Blair required that McKinney fully discuss McKinney's medical condition with Blair and required that McKinney provide paperwork to Blair proving McKinney's condition.

13. McKinney provided such paperwork to Blair and requested accommodation from Blair in the form of more time to complete the Department's academic training program.

14. Blair has testified under oath that Blair did not provide such accommodation to McKinney and never sought out whether such accommodation was available from the Department or was valid based upon McKinney's disability and hospital admission.

15. The Department allows teachers up to three (3) years to complete the program in which McKinney was enrolled.

16. The Department also provides for extensions to complete the training program in which McKinney was enrolled based upon disability and leave while the teacher is attempting to complete the program.

17. Blair testified under oath that Blair never sought any such accommodation for McKinney even after Blair became aware of McKinney's disability and even after McKinney was admitted to the hospital due to complications from her disabilities.

18. Further, according to the Department, there is no record of anyone from Malvern ever inquiring into any possible extension for McKinney even after McKinney requested such an extension as an accommodation.

19. Blair told McKinney that regardless of McKinney's disability, McKinney must complete the program no later than May 2014.

20. Blair required this of McKinney knowing that it was impossible for McKinney to complete the program by that date.

21. When McKinney again sought accommodation for her disability in the form of additional time to complete the program as allowed by the Department, Blair began the process of terminating McKinney.

22. Blair allowed younger, Caucasian women who were not disabled and who did not seek accommodation for a disability, and who did not complete the Department's program within the required amount of time to move into other positions of employment at Malvern without formal interview.

23. Such women included Sarah Flores and Jessica Locke.

24. Blair refused to consider moving McKinney into any other position of employment without a formal interview.

25. Blair scheduled an interview for McKinney and Blair made the decision about who would be on the interview panel.

26. Such heavy handedness in deciding the process of hiring a teacher for a position is outside of standard policy at Malvern for such hires.

27. This interview was used as a pretext for Malvern's discrimination against McKinney.

28. The panel included persons who harassed McKinney during the course of the interview to the point where McKinney could not continue with the contrived interview.

29. After this contrived interview, Blair refused to have any further discussions with McKinney about McKinney continuing to be employed at Malvern in any capacity.

30. On April 1, 2014, McKinney received a letter from Superintendent Brian Golden ("Golden") telling McKinney that her contract would not be renewed for the upcoming 2014-15 school year because she had purportedly not fulfilled the requirements of the Department's program.

31. At the time of McKinney's termination, she was over the age of 40.

32. She was terminated while younger, Caucasian, non-disabled teachers at Malvern who did not request accommodation for a disability and who had not completed the Department's program were not terminated.

33. Further, McKinney was terminated in retaliation for requesting a valid accommodation to her disability that Malvern refused to honor or even contact the proper state authorities about honoring.

34. At all times, Malvern employed more than 50 employees in the State of Arkansas.

35. McKinney was terminated based upon her race, disability, age, and in retaliation for seeking accommodation for her disability in the form of more time to

complete a state program for which the state agency in charge of the program would have granted more time.

36. McKinney was terminated by Golden with the full ratification and approval of Malvern.

37. Similarly situated persons who are not disabled and who worked for Malvern who committed as serious or more serious offenses than those committed by McKinney were allowed to retain their employment with Malvern.

38. Similarly situated persons who worked for Malvern, have not requested accommodations for their disabilities, and committed as serious or more serious offenses than those committed by McKinney were allowed to retain their employment with Malvern.

39. Similarly situated persons who are African-American and who worked for Malvern who committed as serious or more serious offenses than those committed by McKinney were allowed to retain their employment with Malvern.

40. Similarly situated persons under the age of 40 years old who worked for Malvern who committed as serious or more serious offenses than those committed by McKinney were allowed to retain their employment with Malvern.

41. Upon information and belief, after McKinney was terminated by Malvern, McKinney was replaced by a non-disabled person under the age of 40.

42. McKinney timely filed a Charge of Discrimination with the EEOC, and now timely files this action within ninety (90) days of receiving her Right to Sue Letter from the EEOC.

43. As of the filing of this Cause of Action, no official at Malvern has taken any action to attempt to reinstate McKinney or otherwise rectify the violations of law committed by Malvern and its agents.

44. Defendant Malvern is a recipient of federal funding as defined under the Rehab Act.

## COUNT I – ADEA

45. Plaintiff re-alleges the foregoing as if fully set out herein.

46. McKinney re-alleges the foregoing as it is fully set out herein.

47. McKinney is over the age of forty.

48. McKinney was terminated under circumstances similarly situated individuals under the age of 40 or who were within 10 years of McKinney's age were not terminated.

49. Because of this, McKinney alleges that McKinney is a victim of age discrimination, since McKinney believes that the policy of Malvern is to promote and retain persons under the age of 40 or who are within 10 years of McKinney's age and to not apply the same level of disciplinary scrutiny to the actions of employees under the age of 40 or who are 10 years younger than McKinney.

50. As a direct and proximate cause of Malvern's actions as alleged herein, McKinney has lost wages, lost fringe benefits, and suffered both severe mental and emotional distress in an amount to be proven at trial.

51. Malvern's actions have been so egregious so as to warrant the imposition of punitive damages.

**COUNT II – TITLE VII**

52. Plaintiff re-alleges the foregoing as if fully set out herein.

53. Malvern violated Title VII of the Civil Rights Act of 1964 by discriminating against McKinney based on her sex and race.

54. Upon information and belief, McKinney's old position was filled by a person who is not African-American after McKinney's unlawful termination.

55. McKinney was terminated under circumstances similarly situated individuals who are not African-American were not terminated.

56. Because of this, McKinney alleges that McKinney is a victim of race discrimination since McKinney believes that the policy of Malvern is to promote persons under who are not African-American and to not apply the same level of disciplinary scrutiny to the actions of employees who are not African-American.

57. As a direct and proximate cause of Defendant's acts or omissions as alleged herein, McKinney has suffered lost wages, lost fringe benefits, lost earning capacity, and has incurred expenses that would not otherwise have been incurred.

**COUNT III – ADA, REHAB ACT, AND RETALIATION**

58. Plaintiff re-alleges the foregoing as if fully set out herein.

59. Malvern discriminated against McKinney because of McKinney's disability in violation of the ADA and the Rehab Act.

60. Similarly situated non-disabled employees of Malvern have not been terminated under the same circumstance under which McKinney was terminated.

61. Further, Malvern failed to accommodate McKinney's disability, regarded McKinney as disabled, and took adverse action against McKinney in violation of the ADA and the Rehab Act.

62. Because of McKinney's repeated requests for accommodation that went either unanswered or punished by Malvern, McKinney was retaliated against by Malvern.

63. Malvern terminated Plaintiff in retaliation for having made requests for accommodation.

64. As a direct and proximate cause of Defendant's acts and omissions alleged herein, McKinney has suffered severe mental and emotional distress, lost wages, lost fringe benefits, and incurred other damages in an amount to be proven at trial.

65. Defendant's actions have been so egregious so as to warrant the imposition of punitive damages.

**COUNT IV – TFDA AND BREACH OF CONTRACT**

66. Plaintiff re-alleges the foregoing as if fully set out herein.

67. Based upon the facts alleged in this Complaint, Malvern terminated McKinney in violation of the TFDA by failing to validly document and give notice of the alleged violations for which McKinney was terminated.

68. Further, Malvern failed to provide valid notice of actual grounds upon which Malvern terminated McKinney.

69. Further, Malvern has failed to reinstate McKinney to her former position even after being made fully aware of Malvern's violations of law.

70. Further, Malvern failed to state proper grounds for its termination of McKinney within the requirements of the TFDA.

71. As a direct and proximate cause of Defendant's acts and omissions alleged herein, McKinney has lost wages, lost fringe benefits, lost earning capacity, suffered severe emotional distress, and incurred other damages in an amount to be proven at trial.

**COUNT V – PROMISSORY ESTOPPEL**

72. Plaintiff re-alleges the foregoing as if fully set out herein.

73. Defendant provided McKinney with a handbook that included internal processes by which employees could report discrimination based age and disability.

74. McKinney is a disabled person over the age of 40 who reported discrimination by to Malvern handbook.

75. McKinney was terminated for reporting discrimination to Malvern in violation of Malvern's handbook and processes.

76. McKinney was terminated for requesting an accommodation related to her disabilities in violation of Malvern's handbook and processes.

77. As outlined in Malvern's handbook, Malvern specifically guaranteed McKinney protection from discrimination based age, race, and disability by Malvern and Malvern's employees.

78. McKinney reasonably regarded the procedures as outlined in Defendant's handbook as a promise to abide by state law, federal law, and Defendant's own internal procedures regarding the Title VII, the ADA, the Rehab Act, and the ADEA.

79. Defendant intended for McKinney to regard Defendant's handbook as a promise that Defendant would abide by the procedures for reporting discrimination under the Title VII, the ADA, the Rehab Act, and the ADEA.

80. Defendant intended for McKinney to regard Defendant's handbook as a promise that Defendant would provide fair treatment to McKinney with regard to discrimination under Title VII, the ADA, the Rehab Act, and the ADEA as outlined in Defendant's handbook.

81. McKinney did, in fact, reasonably rely upon Defendant's promises to abide by its own procedures as outlined in Defendant's handbook.

82. Defendant failed to abide by Defendant's own procedures as outlined in Defendant's handbook regarding accommodation under the ADA and the Rehab Act.

83. Defendant failed to provide fair treatment to McKinney with regard to age under the ADEA.

84. Defendant failed to provide fair treatment to McKinney with regard to race under Title VII.

85. Due to McKinney's reliance on Defendant's promise to abide by the procedures as outlined in Defendant's handbook, McKinney has experienced an injustice in the form of her termination and has been damaged.

86. As a direct and proximate cause of Defendant acts and omissions alleged herein, McKinney has lost wages, lost fringe benefits, lost earning capacity, and incurred other damages in an amount to be proven at trial.

87. Defendant's actions have been willful, such that McKinney is entitled to an award of liquidated and punitive damages.

WHEREFORE, Plaintiff prays for appropriate compensatory, liquidated, and punitive damages exceeding $75,000, reinstatement or front pay, for reasonable attorneys' fees, for costs, for a trial by jury, for an injunction requiring Defendant to remove all adverse employment information from Plaintiff's personnel file, for a positive employment recommendation, for a declaratory judgment that Defendant's acts and omissions have violated the ADA, for a declaratory judgment that Defendant's acts and omissions have violated the ADEA, for a declaratory judgment that Defendant's acts and omissions have violated Title VII, for a declaratory judgment that Defendant's acts and omissions have violated the TFDA, for an injunction requiring that Defendant comply with both state and federal law, for a requirement that this lawsuit be posted at all facilities under the control of Defendant, for a requirement that a posting be placed in all facilities that states that Defendant have violated both state and federal law with regard to Plaintiff, for an investigation of all individuals who are herein accused of retaliation and discrimination, for a requirement that Defendant must maintain all complaints of discrimination and retaliation for the next seven years, for a requirement that Defendant Malvern School District be required to establish a hotline for

discrimination and retaliation complaints, for a requirement of an independent monitor to be placed at Defendant Malvern School District, for a requirement of training classes for all personnel and management at Defendant Malvern School District regarding discrimination and retaliation as well as handling complaints of the same, and for all other proper relief.

Respectfully submitted,

WALLACE, MARTIN, DUKE & RUSSELL, PLLC
Attorneys at Law
1st Floor, Centre Place
212 Center Street
Little Rock, Arkansas 72201
Attorney for Plaintiff

By: */s/ James Monroe Scurlock*
James Monroe Scurlock, AR Bar No. 2012028
jms@WallaceLawFirm.com